UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| David A. Leker,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>Fargo Park District,<br><br>　　　　　　　Defendant. | Civil No.: _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMES NOW**, Plaintiff David A. Leker, by and through the undersigned attorney, and for his Complaint against Defendant Fargo Park District, states and alleges as follows:

**PRELIMINARY STATEMENT**

**[¶1]**　Plaintiff David A. Leker ("Plaintiff") brings this action against the Fargo Park District ("Defendant") for violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, as well as Intentional Infliction of Emotional Distress under North Dakota common law.

**[¶2]**　Plaintiff was a longstanding and highly competent employee of Defendant, having worked for the Fargo Park District for 22 years, including three years as Executive Director. Despite his successful leadership and contributions, Defendant subjected him to age-based discrimination, retaliation, hostile work environment, targeted harassment, public humiliation, and ultimately wrongful termination.

**[¶3]**　Defendant's conduct included, but was not limited to, selectively enforcing a residency policy, placing Plaintiff on a Performance Improvement Plan ("PIP") without legitimate

cause, engaging in persistent harassment and belittlement, and publicly and privately attacking Plaintiff's leadership abilities.

[¶4]    Plaintiff's age and his discussion of early retirement were significant factors in Defendant's adverse employment actions, including its ultimate decision to terminate him.

[¶5]    Although Defendant ultimately appointed an internal employee, Susan Faus, as the new Executive Director, her selection does not negate the role that age and Plaintiff's retirement discussions played in his removal. While Ms. Faus is over 40 and within the ADEA's protected class, she was not an employee discussing imminent retirement, nor was she subjected to the same scrutiny and treatment as Plaintiff. The distinction is not merely age but the implications of Plaintiff's retirement status as an older employee nearing a natural career transition, which Defendant sought to accelerate through adverse employment actions.

## JURISDICTION

[¶6]    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the ADEA, 29 U.S.C. §§ 621-634.

[¶7]    This Court also has supplemental jurisdiction over Plaintiff's related claims arising under North Dakota common law pursuant to 28 U.S.C. § 1367(a), as these claims arise from the same set of facts as Plaintiff's federal claims.

## VENUE

[¶8]    Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## CONDITIONS PRECEDENT

[¶9]    On December 27, 2023, Plaintiff timely filed charges of age discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

[¶10]    On December 16, 2024, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADEA.

## PARTIES

[¶11]    Plaintiff is an individual residing at 3826 Kensington Dr., West Fargo, ND 58078.

[¶12]    Plaintiff is currently 59 years old.

[¶13]    Plaintiff is an employee as defined by the ADEA, 29 U.S.C. § 630(f).

[¶14]    Plaintiff worked for the Fargo Park District as the Executive Director in Fargo, North Dakota, from approximately July 2019 (as Interim Executive Director) through June 30, 2023. Prior to serving as Executive Director, Plaintiff worked for the Park District for 22 years, holding various leadership positions.

[¶15]    Upon information and belief, Defendant Fargo Park District is a municipal entity located at 6100 38th St. S., Fargo, ND 58104. At all relevant times herein, Defendant employed 20 or more employees and was an employer under the ADEA, 29 U.S.C. § 630(b).

## FACTS

[¶16]    Plaintiff began working for Defendant in 1999 and served in various leadership roles before being appointed Executive Director in 2020.

[¶17]    During his tenure, Plaintiff successfully led major projects, maintained positive performance reviews, and developed strong relationships with employees, stakeholders, and the public.

[¶18]    Despite his successful leadership, Plaintiff was repeatedly subjected to belittling and demeaning treatment by Board members. They openly questioned his leadership, spread damaging rumors, and made false accusations about his work ethic, creating a hostile work environment.

[¶19]    Board members continually harassed Plaintiff about his legally compliant residency, referring to his Fargo apartment as a "flop house" and pressuring him to sell his West Fargo home, despite his full compliance with the residency policy. This forced Plaintiff into unnecessary personal hardship, including waking at 4:00 AM daily to accommodate his living situation.

[¶20]    Plaintiff was also subjected to targeted mistreatment at Board meetings and public events. In 2022, a Board member told Plaintiff just before a meeting that he was about to be terminated, forcing him to enter the meeting under extreme stress and uncertainty. This was part of a consistent pattern of intimidation, where Board members made direct threats concerning Plaintiff's job security.

[¶21]    Plaintiff received no significant disciplinary actions before being placed on a Performance Improvement Plan ("PIP") in late 2022.

[¶22]    In early 2023, as tensions with the Board escalated, Plaintiff began considering early retirement. He began discussing this possibility with Board members.

[¶23]    As part of the early retirement discussions, Plaintiff devised a structured exit strategy that would have allowed him to buy down five years of service credit with the North Dakota Public Employees Retirement System ("NDPERS"), potentially making him eligible for full retirement benefits by August 1, 2024. Plaintiff disclosed this plan during a biweekly meeting.

Plaintiff also disclosed his plan to publicly announce his retirement in February 2024, allowing sufficient time for leadership succession planning.

[¶24]   However, rather than allowing Plaintiff to move forward with a planned transition, Defendant used these discussions as a pretext to accelerate his removal.

[¶25]   Despite Plaintiff successfully completing all PIP requirements, the Board voted 3-2 to terminate him in a Special Meeting on June 30, 2023, with no prior warning.

[¶26]   The Board's comments, during the Special Meeting about needing a "more visionary leader" occurred after Plaintiff's retirement discussions, demonstrating age bias and a pretext for age discrimination.

[¶27]   Further, the Board allowed termination discussions to play out in public, further humiliating Plaintiff and damaging his professional reputation. Rather than following typical executive departure procedures, the Board staged Plaintiff's termination in an open forum, ensuring that damaging, false, and exaggerated criticisms of his performance would be recorded and accessible to the public.

[¶28]   The public spectacle of Plaintiff's termination was designed to destroy his professional credibility, ensuring that his reputation would be permanently damaged.

[¶29]   The Board's false and exaggerated criticisms have made it significantly more difficult for Plaintiff to secure comparable employment. Any prospective employer can access recordings of the Board's meetings, where damaging remarks about Plaintiff's leadership were aired without justification.

[¶30]   In fact, Plaintiff has applied for over one hundred (100) comparable positions nationwide and has not received a single job offer. The reputational harm caused by Defendant's public attacks has effectively blacklisted Plaintiff from his industry.

**[¶31]**  Plaintiff has suffered from significant anxiety, sleeplessness, financial instability, and loss of professional standing, all as a direct result of Defendant's deliberate campaign to destroy his reputation and livelihood.

**[¶32]**  Instead of allowing Plaintiff to retire under this structured plan, Defendant intentionally deprived him of the ability to retire with full benefits.

## COUNT ONE

### Discriminatory Termination Based on Age in Violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634

**[¶33]**  Plaintiff repeats and realleges paragraphs 1 through 32 as if fully set forth herein.

**[¶34]**  Plaintiff was over 40 years old at the time of his termination and was qualified for his position, having successfully served as Interim Executive Director and led major projects for the Park District. Plaintiff's age placed him within the ADEA's protected class pursuant to 29 U.S.C. § 631(a).

**[¶35]**  Defendant subjected Plaintiff to adverse employment actions due to his age and his discussion of early retirement, including:

  a) Heightened scrutiny and selective enforcement of policies;

  b) Placement on a PIP without legitimate cause; and

  c) Abrupt termination despite Plaintiff completing all PIP requirements.

**[¶36]**  The Board's comments about needing a "more visionary leader" after talks of early retirement, establish age bias and pretext for age discrimination.

**[¶37]**  Following Plaintiff's termination, Defendant initially appointed two interim co-directors. Ultimately, the Board promoted an internal employee, Susan Faus, to Executive Director. While Ms. Faus is also over 40, she was not an employee discussing imminent retirement,

nor was she subjected to the same scrutiny and adverse treatment as Plaintiff, showing Defendant's discriminatory treatment of employees based on their age-related career stage rather than solely numerical age.

[¶38]   As a direct and proximate result of Defendant's unlawful discriminatory actions, Plaintiff suffered economic harm, lost wages and benefits, reputational damage, and other compensable losses.

[¶39]   Defendant's willful violation of the ADEA entitles Plaintiff to liquidated damages under 29 U.S.C. § 626(b).

## COUNT TWO

### Retaliation in Violation of the Age Discrimination in Employment Act,

### 29 U.S.C. §§ 621-634

[¶40]   Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

[¶41]   Plaintiff engaged in protected activity under the ADEA by discussing his plans for early retirement, a topic closely linked to age discrimination.

[¶42]   The proximity between Plaintiff's protected activity and Defendant's adverse actions demonstrates a causal connection, supporting a claim under 29 U.S.C. §§ 621-634.

[¶43]   Defendant's stated reasons for Plaintiff's termination were pretextual, as evidenced by the Board's shifting explanations for termination and the public nature of its criticisms and failure to follow normal executive transition procedures.

[¶44]   As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered economic damages, emotional distress, reputational harm, and other compensable losses.

[¶45]   Defendant's retaliation was willful and intentional, entitling Plaintiff to liquidated damages under 29 U.S.C. § 626(b).

## COUNT THREE

**Intentional Infliction of Emotional Distress in Violation of North Dakota Common Law**

**[¶46]** Plaintiff repeats and realleges paragraphs 1 through 45 as if fully set forth herein.

**[¶47]** Defendant, through its Board members, engaged in a deliberate and malicious campaign to harass, intimidate, and humiliate Plaintiff, ultimately creating an intolerable work environment and causing him severe emotional distress.

**[¶48]** Defendant's conduct was extreme and outrageous, far exceeding the normal bounds of workplace disputes. The Board deliberately weaponized its authority to publicly and privately degrade, threaten, and interfere with Plaintiff's financial security and professional reputation.

**[¶49]** Specifically, Defendant's actions included, but were not limited to:

(a) Threatening Plaintiff's job security on multiple occasions, including an instance in 2022 when a Board member informed him that he was about to be terminated just prior to a meeting. This deliberate effort to create anxiety and instability forced Plaintiff to live under constant fear of losing his job.

(b) Harassing Plaintiff about his legally compliant housing situation, fixating on his residency despite his full compliance with the Board's policy. Board members mocked and belittled his living arrangements, referring to his Fargo apartment as a "flop house" and pressuring him to sell his West Fargo home, forcing him into an unnecessary and disruptive housing crisis.

(c) Placing Plaintiff on a baseless Performance Improvement Plan ("PIP"), despite years of successful leadership, positive performance reviews, and no prior significant disciplinary actions.

(d) Publicly attacking Plaintiff's leadership abilities during Board meetings, broadcasting false, exaggerated, and damaging criticisms in an open forum, ensuring the destruction of his professional reputation in the community.

(e) Privately attacking Plaintiff's leadership abilities whenever Plaintiff disagreed with a Board member.

(f) Orchestrating a public spectacle of his termination at a Special Meeting on June 30, 2023, despite his compliance with the PIP and substantial employee and

  community support. The decision was executed in a humiliating and retaliatory manner, exposing Plaintiff to unnecessary disgrace.

 (g) Preventing Plaintiff from retiring on his own terms, intentionally obstructing his ability to buy out his remaining retirement benefits. Plaintiff had already shared his planned retirement timeline with Board members, yet Defendant deliberately chose to terminate him before he could secure his full benefits, depriving him of financial stability after decades of service.

[¶50] Defendant's actions were intentional, calculated, and designed to force Plaintiff out in the most demeaning and harmful way possible.

[¶51] Upon information and belief, some Board members acknowledged to Plaintiff that the ongoing mistreatment he endured constituted workplace harassment.

[¶52] Defendant's actions were willful, malicious, and carried out with reckless disregard for Plaintiff's well-being.

[¶53] As a direct result of Defendant's conduct, Plaintiff suffered severe emotional distress, including but not limited to anxiety, loss of sleep, reputational harm, financial instability, and significant disruptions to his career and personal life.

## PRAYER FOR RELIEF

[¶54] WHEREFORE, Plaintiff David A. Leker prays for judgment against Defendant Fargo Park District and requests the Court enter judgment as follows:

1) Award Plaintiff for his past and future loss of wages and benefits, plus interest;

2) Order Defendant to reinstate Plaintiff to a position comparable to his former position or, in lieu of reinstatement, award him front pay (including benefits);

3) Award to Plaintiff liquidated damages incurred in connection with this action;

4) Award to Plaintiff compensatory and punitive damages associated with this action;

5) Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

6) Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

**A TRIAL BY JURY IS HEREBY DEMANDED**

Dated this 12th day of March, 2025.

O'KEEFFE O'BRIEN LYSON LTD.

*/s/ Timothy O'Keeffe*

TIMOTHY O'KEEFFE (ND ID. #05636)
720 Main Avenue
Fargo, ND 58103
Phone: (701) 235-8000
Fax: (701) 235-8023
tim@okeeffeattorneys.com
***Attorney for Plaintiff***