UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| David A. Leker, | ) |
| Plaintiff, | ) Case No. 3:25-cv-00059 |
| | ) |
| | ) **DEFENDANT FARGO PARK DISTRICT'S** |
| -vs- | ) **BRIEF IN SUPPORT OF MOTION FOR** |
| | ) **JUDGMENT ON THE PLEADINGS** |
| Fargo Park District, | ) **DISMISSING PLAINTIFF'S CLAIMS** |
| | ) **FOR INTENTIONAL INFLICTION** |
| Defendant. | ) **OF EMOTIONAL DISTRESS** |

**INTRODUCTION**

[¶1] Defendant Fargo Park District ("Park District"), by and through its undersigned counsel, respectfully moves this Court for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, dismissing Plaintiff's claims for intentional infliction of emotional distress. The Park District asserts that the Board's actions, as alleged in Plaintiff's Complaint, were neither so extreme in character nor so excessive in degree as to exceed all possible grounds of human decency, or to be deemed atrocious and utterly intolerable in a civilized society.

[¶2] Plaintiff David A. Leker ("Leker") has asserted three separate claims against the Park District. Count I is based on a claim of age discrimination pursuant to 29 U.S.C. §§ 621-634. Count II is based on age discrimination - retaliation pursuant to 29 U.S.C. §§ 621-34, and Count III asserts a claim for intentional infliction of emotional distress. The Park District seeks to dismiss Leker's state law claim for intentional infliction of emotional

-1-

distress (Count III).

## STATEMENT OF FACTS

[¶3]    While the Park District disputes many of the allegations contained in Leker's

Complaint herein, it treats them as true here for the sole purpose of this motion.

[¶4]    Leker began working for the Park District in 1999, served in various leadership roles,

and was appointed Executive Director in 2020.  (Doc. 1, Compl., ¶ 16, *Leker v. Fargo Park*

*District,* No. 3:25-cv-59 (D.N.D. March 12, 2025).  Leker alleges that while he was serving

as Executive Director of the Park District, through its Board members, the district engaged

in deliberate and malicious conduct, creating an intolerable work environment and causing

him severe emotional distress.  (Compl. ¶ 47).

[¶5]    Specifically, Leker alleges that the Park District's actions supporting a claim for

intentional infliction of emotional distress are:

(a)    Threatening Leker's job security on multiple occasions, including an instance

in 2022 when a Board member informed him that he was about to be

terminated just prior to a meeting. This deliberate effort to create anxiety and

instability forced Leker to live under constant fear of losing his job.  (Compl.

¶ 49).

(b)    Harassing Leker about his legally compliant housing situation, fixating on his

residency despite his full compliance with the Board's policy.  Board members

mocked and belittled his living arrangements, referring to his Fargo apartment

as a "flop house" and pressuring him to sell his West Fargo home, forcing him into an unnecessary and disruptive housing crisis. *Id.*

(c)    Placing Leker on a baseless Performance Improvement Plan ("PIP"), despite years of successful leadership, positive performance reviews, and no prior significant disciplinary actions. *Id.*

(d)    Publicly attacking Leker's leadership abilities during Board meetings, broadcasting false, exaggerated, and damaging criticisms in an open forum, and ensuring the destruction of his professional reputation in the community. *Id.*

(e)    Privately attacking Leker's leadership abilities whenever he disagreed with a Board member. *Id.*

(f)    Orchestrating a public spectacle of his termination at a Special Meeting on June 30, 2023, despite his compliance with the PIP and substantial employee and community support. The decision was executed in a humiliating and retaliatory manner, exposing Leker to unnecessary disgrace. *Id.*

(g)    Preventing Leker from retiring on his own terms, intentionally obstructing his ability to buy out his remaining retirement benefits. Leker had already shared his planned retirement timeline with Board members. Yet, the Park District deliberately chose to terminate him before he could secure his full benefits, depriving him of financial stability after decades of service. *Id.*

-3-

## LAW AND ARGUMENT

### I.    Standards for judgment on the pleadings.

[¶6]    A party may move for judgment on the pleadings at any point so long as it moves early enough to avoid a delay of trial. Fed. R. Civ. P. 12(c). "Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The court evaluates a motion for judgment on the pleadings under the same standard as a motion brought under Rule 12(b)(6). *Id.*

[¶7]    A motion to dismiss a complaint under Fed. R. Civ. P. 12(b)(vi) tests the legal sufficiency of the claim presented in the complaint. *Vandall v. Trinity Hospitals*, 2004 ND 47, ¶ 5, 676 N.W.2d 88.  Courts "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).  However, a court need not accept conclusory allegations (*Hanten v. Sch. Dist. Of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999)) or legal conclusions drawn by the pleader from the facts alleged as true. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II.    A claim for intentional infliction of emotional distress must be based upon extreme and outrageous conduct exceeding all possible bounds of decency.

[¶8]    Leker brings a cause of action under North Dakota common law against the Park

District, alleging intentional infliction of emotional distress.  (Compl. at ¶¶ 46-53).

[¶9]   The elements for intentional infliction of emotional distress are "(1) extreme and outrageous conduct that is (2) intentional or reckless and that causes (3) severe emotional distress." *McMahon v. Sanford*, 2025 ND 184, ¶ 19, 27 N.W.3d 478 (citing *Neppel v. Dev. Homes, Inc.*, 2021 ND 5, ¶ 16, 953 N.W.2d 642). The conduct must exceed "all possible bounds of decency." *Id*.   Initially, the court determines if a defendant's conduct may reasonably be regarded as extreme and outrageous.  *Dahlberg v. Lutheran Social Services of North Dakota*, 2001 ND 73, ¶ 21, 625 N.W.2d 241; *Sec. Nat. Bank, Edgeley v. Wald*, 536 N.W.2d 924, 927 (N.D. 1995); *Muchow v. Lindblad*, 435 N.W.2d 918, 924 (N.D. 1989).

[¶10]  Conduct of a defendant which is tortious or even criminal, or that the defendant intended to inflict emotional distress, or even that the defendant's conduct has been characterized by malice or a degree of aggravation which may entitle the plaintiff to punitive damages for other torts, is not enough to establish extreme and outrageous conduct. *Dahlberg*, ¶ 20. Liability for a claim of intentional infliction of emotional distress will be found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Id.* Generally, a viable claim is one in which the recitation of the facts to an average member of the community would arouse their resentment against the actor and lead them to exclaim, "Outrageous!" *Id.*

[¶11]  In *Dahlberg*, the plaintiff's action for intentional infliction of emotional distress was

dismissed. *Id.* at ¶ 26. The plaintiff alleged that Lutheran Social Services, as her employer, created an environment of intimidation and a workplace of fear and anxiety, outside the norms of an employment relationship. *Id.* at ¶ 18. The plaintiff claimed that after reporting possible abuses, she was subjected to a "hostile work environment" and was ultimately terminated in retaliation for making such reports. *Id.* at ¶ 25. The trial court's determination that such conduct on the part of the employer did not rise to the level of being "extreme and outrageous" was affirmed by the North Dakota Supreme Court. *Id.* at ¶ 26. Actionable conduct must be so extreme as to be beyond all possible bounds of decency or to be utterly intolerable in a civilized society. *Id.* at ¶ 25. The North Dakota Supreme Court noted that "the nature of any termination is such that it often produces stress and mental anguish in the person being terminated [and] the test is not whether or not the termination was traumatic, but whether or not the termination was outrageous." *Id.*

[¶12] In *Vandall*, the plaintiff claimed that Trinity, in response to reports to the North Dakota Board of Medical Examiners, began a series of retaliatory actions against him, including censuring him and failing to reappoint him to various hospital committees. *Vandall*, ¶ 2. He further alleged that his employment at Trinity was not renewed or extended in retaliation against his reports. *Id.* Vandall argued that the defendants initiated and continued a series of meritless administrative actions to impair his right and ability to practice medicine and that such actions were without a reasonable basis. *Id.* at ¶ 3. The trial court dismissed Vandall's complaint pursuant to N.D.R.Civ.P. 12(b)(vi), concluding that

Vandall failed to state a claim upon which relief could be granted.  *Id.* at ¶ 4. In particular, the trial court and the North Dakota Supreme Court concluded that the plaintiff's claims against the defendants failed to meet the threshold requirement of extreme and outrageous conduct necessary for a claim for intentional infliction of emotional distress.  *Id.*

[¶13]  In *Wald*, the North Dakota Supreme Court upheld the trial court's granting of summary judgment on a claim for intentional infliction of emotional distress against a bank because the plaintiff's allegations that the bank failed to release insurance proceeds to them did not rise to the level of extreme and outrageous conduct. *Wald*, 536 N.W.2d at 928.

[¶14]  In *Muchow*, the North Dakota Supreme Court held that a police officer's statements describing to the plaintiffs the details of their daughter's apparent suicide were inconsiderate and unkind but did not rise to the level of extreme and outrageous conduct.  *Muchow*, 435 N.W.2d at 924.  Despite not undertaking any serious investigation, the officer assumed that the woman committed suicide and described the grim details to the parents, including telling them that the decedent's body had been found nude when, in fact, her body was partially clothed. *Id.* at 919. The officer further advised the parents that their daughter had previously stated her intent to commit suicide. *Id.* The officer also accused the parents of attempting to assuage their feelings of guilt for not having loved and supported the woman after they raised questions regarding the cause of her death. *Id.* Approximately one month after the woman's death, the plaintiffs had her body exhumed, and an autopsy was performed, establishing that the woman had died from strangulation. *Id.* The North Dakota Supreme

Court affirmed the trial court's dismissal of the plaintiffs' claims for intention infliction of emotional distress even though the officer's conduct could have been described as being negligent, rude, inconsiderate, and unkind but were not reasonably regarded as being outrageous in character or degree so as to exceed all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community. *Id.* at 924.

[¶15]  In *Chegwidden v. Evenson*, 2015 ND 131, ¶ 27, 863 N.W.2d 843, plaintiffs' action for intentional infliction of emotional distress was dismissed on the basis that the conduct did not rise to the strenuous requirements of "beyond all possible bounds of decency." In *Chegwidden*, the landlord was notified many times of smoking occurring within an apartment building, but did nothing beyond posting no-smoking signs. *Id.* at ¶ 26.

[¶16]  In *Kautzman v. McDonald*, 2001 ND 20, ¶¶ 1-2, 621 N.W.2d 871, plaintiffs alleged that a Cass County deputy sheriff and other law enforcement officials shot and killed five dogs at large that had escaped from the plaintiff's property. The North Dakota Supreme Court agreed with the trial court that the actions of the law enforcement officers did not rise to the level of extreme or outrageous conduct within the parameters of the tort of intentional infliction of emotional distress. *Id.* at ¶ 22. The court further noted that the plaintiffs' allegations that they "continue to agonize" over the loss of their dogs were insufficient to meet the requirement of severe emotional distress. *Id.*

### III.    Mere insults, indignities, or threats by Board members do not constitute extreme or outrageous conduct.

[¶17]  Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities

do not support an action for intentional infliction of emotional distress. *Dahlberg*, ¶ 20.

[¶18]  In *Hubbard v. United Press International, Inc.*, 330 N.W.2d 428, 439-40 (Minn. 1983), the Minnesota court held that an employer's discipline and written and verbal criticism of an employee's job performance were not extreme or outrageous.  The North Dakota Supreme Court favorably cited *Hubbard* in *Dahlberg*, ¶ 25.

[¶19]  In *Lucas v. Riverside Park Condominiums Unit Owners Ass'n*, 2009 ND 217, ¶ 32, 776 N.W.2d 801, the plaintiff alleged that members of the Association "verbally and physically threatened" him.  The North Dakota Supreme Court held that, as a matter of law, allegations of verbal and physical threats do not rise to the level necessary to support an action for intentional infliction of emotional distress. *Id.*

[¶20]  In a recent decision by the North Dakota Supreme Court, the court held that statements made by an attorney for a coop at its annual meeting calling the plaintiffs "untrustworthy, crooks, and thieves" and telling the meeting attendees "not to do business with the [plaintiffs]" did not rise to the extreme and outrageous standard required in a claim for intentional infliction of emotional distress.  *Killoran v. Kaler*, 2025 ND 64, ¶¶ 6, 47, 18 N.W.3d 867.

[¶21]  In *Weiss v. Collection Ctr., Inc.*, 2003 ND 128, ¶ 23, 667 N.W.2d 567, the plaintiffs' claims for intentional and negligent infliction of emotional distress were dismissed.  The plaintiffs allege that the defendants attempted to collect a $255.00 debt in violation of the Fair Debt Collection Practices Act. *Id.* at ¶ 6. The plaintiffs allege that the defendants

improperly threatened seizure of their vehicle through the sending of threatening letters and notices. *Id.* at ¶ 7. Over a period of three months, defendants contacted the plaintiffs four times by letter and once by telephone. *Id.* at ¶ 22. The plaintiffs described the effect of the letter on them, causing them to be "scared" and "upset" because they were afraid that the defendants might take their vehicles, causing a loss of employment. *Id.* The trial court and the North Dakota Supreme Court concluded that the evidence, even if viewed in the light most favorable to plaintiffs, did not approach "extreme and outrageous conduct." *Id.*

[¶22]   In *Poemoceah v. Morton Cnty., N. Dakota*, 117 F.4th 1049, 1059 (8th Cir. 2024), the plaintiff alleged that the officers assaulted him, taunted and berated him, and then forced him to walk with a broken pelvis more than 200 feet, and that, as direct and foreseeable consequence of these actions, he suffered severe emotional distress and mental anguish. *Id.* at 1058.   The 8th Circuit Court of Appeals affirmed the dismissal of the plaintiff's intentional infliction of emotional distress claim. *Id.* at 1059. The court found these allegations failed to satisfy the extreme and outrageous conduct because the officers' alleged taunts, while insensitive, were not atrocious or utterly intolerable in a civilized community. *Id.* at 1058. Further, the court noted, the extreme and outrageous conduct threshold for a claim of intentional infliction of emotional distress under North Dakota law is strenuously high and narrowly limited to conduct that exceeds all possible bounds of decency. *Id.*

**IV.    The Board members' alleged conduct does not rise to the threshold level to assert a claim of intentional infliction of emotional distress.**

[¶23]   The case law discussed above makes it abundantly clear that Leker's allegations fail

to state a claim upon which relief can be granted because the alleged conduct of the Fargo Park District does not meet the extreme and outrageous conduct needed for an intentional infliction of emotional distress claim.

[¶24]  Leker's Complaint alleges a number of factual situations that he asserts constitute the basis for a claim of intentional infliction of emotional distress.  *See supra* pp. 2-3.  However, even accepting such allegations as being true, none rise to the level of extreme or outrageous conduct supporting a claim for intentional infliction of emotional distress, as a matter of law. Consequently, this Court should follow the long-established precedent discussed above and dismiss Leker's claim for intentional infliction of emotional distress.

[¶25]  Leker alleges that a Board member told him in advance of a meeting that he was about to be terminated, which caused Leker anxiety. (Compl. ¶ 20).  The allegation does not indicate whether that information was provided to Leker as advanced notice of a concern or potential action to be taken by the District, or if it was intended to be taunting.  In either event, the incident does not support Leker's claims.  The allegations are similar to the facts in *Dahlberg*, in which the Plaintiff alleged that the employer created an environment of intimidation and a workplace of fear and anxiety.  The trial court's determination that such conduct did not rise to the level of being "extreme and outrageous" was affirmed by the North Dakota Supreme Court.  Similarly, in *Vandall*, the plaintiff claimed that his employer undertook a series of retaliatory actions against him, which ultimately led to his termination of employment.  Again, both the trial court and the North Dakota Supreme Court concluded

that *Vandall* failed to state a claim upon which relief could be granted. The alleged conduct was not so extreme or outrageous to support a claim for intentional infliction of emotional distress.

[¶26]  In *Lucas*, the plaintiff alleged that a condominium association member verbally and physically threatened him. *Lucas*, 2009 ND at ¶ 32. Again, such acts were found, as a matter of law, not to rise to the level necessary to support an action for intentional infliction of emotional distress. *Id.* This Court should reach a similar conclusion with respect to Leker's claims that he was told his employment was about to be terminated.

[¶27]  Leker next asserts that he was forced to endure a housing crisis when the question of whether he resided within the Fargo city limits was raised. (Compl. ¶ 49). He further asserts that the apartment he rented was called a "flop house" by a Board member. *Id.* Once again, these allegations, even assuming them to be true, do not support a claim for intentional infliction of emotional distress. The North Dakota Supreme Court's holding in *Wald* is instructive. In *Wald*, the bank was alleged to have failed to release insurance proceeds to the plaintiff. *Wald*, 536 N.W.2d at 926. The withholding caused financial strain as well as emotional distress to the plaintiffs. *Id.* Such conduct was not found to be extreme or outrageous. *Id.* at 928. In *Muchow*, a police officer's statements to a grieving family that their daughter committed suicide by walking into a river, that her nude body was recovered from the river, and that the daughter had threatened suicide were found not to be extreme or outrageous conduct, even though the officer had not undertaken any serious investigation,

-12-

and that a subsequent autopsy showed the potential of foul play. *Muchow*, 435 N.W.2d at 924. The officer also made accusations against the parents after they raised questions regarding the cause of their daughter's death. *Id.* at 919.  Although the officer's conduct was rude and inconsiderate, such conduct was not so outrageous in character or extreme in degree as to exceed all possible bounds of decency and cannot be regarded as being atrocious or utterly intolerable in a civilized community. *Id.* at 924-25. In *Weiss*, the defendant, in attempting to collect a $255.00 debt, allegedly threatened seizure of the plaintiffs' vehicle after sending threatening notices and letters over a period of three months. *Weiss*, ¶¶ 2-4. This caused the plaintiffs to be scared and upset.  *Id.* at ¶ 22. Nevertheless, the facts, as assumed, did not approach extreme or outrageous conduct. *Id.* More recently, in *Killoran*, the North Dakota Supreme Court rejected a claim by an attorney that statements made at an annual cooperative meeting to the effect that the plaintiffs were "untrustworthy, crooks, and thieves" and that the meeting attendees "should not do business with them," did not rise to the extreme and outrageous conduct required to support a claim for intentional infliction of emotional distress. *Killoran*, ¶¶ 6, 47.  These examples, which did not support the tort, are more extreme than the allegation that Leker was residing in a "flop house" or that he was not in compliance with the Park District's residency requirements for its executive director.

[¶28] Plaintiff alleges that he was placed on a performance improvement plan as a condition of his employment. (Compl. ¶ 49). This step in the course of a human resources

issue does not constitute extreme or outrageous conduct. The North Dakota Supreme Court's decisions in *Dahlberg* and *Vandall* acknowledge that issues regarding employment discipline, including termination of employment, can be expected to cause stress and mental anguish, but that such employment-related activities do not rise to the level of being extreme and outrageous, nor are they beyond all possible bounds of decency, nor are they utterly intolerable in a civilized society.

[¶29] Leker next argues that Board members made attacks on his leadership skills and abilities both in private and in public meetings. (Compl. ¶ 49). N.D.C.C. § 44-04-19 requires any discussions or actions regarding employment matters being considered by the public body to be conducted in a public meeting. There is no exemption for a political subdivision to convene in executive session merely for the purpose of discussing personnel matters. Thus, any allegation that the district met and discussed his job performance in a public meeting cannot, as a matter of law, support a claim for intentional infliction of emotional distress. Further, as discussed previously, matters involving employment considerations, including discussion of discipline, termination, leadership skills, and the like, will not constitute conduct on the part of the employer rising to a level of being extreme or outrageous and will not be conduct found to be beyond all possible bounds of decency nor to be utterly intolerable in a civilized society. *See Dahlberg, Vandall*, *Hubbard*, and *Lucas*. The same principles and holdings apply to Leker's allegations that the Board, in a public meeting, created a public spectacle with respect to the termination of his employment.

-14-

[¶30]  Lastly, Leker alleges that he had shared his planned retirement timeline with Board members, yet the Board members deliberately chose to terminate him before he could secure his full benefits. (Compl. ¶ 49).  Much like discussed above, employment actions, including discipline, PIPs, or termination, do not constitute outrageous or extreme conduct. *See Dahlberg* and *Vandall*.  Furthermore, decisions or actions causing adverse financial impacts similarly do not support a conclusion of extreme or outrageous conduct.  *See Dahlberg, Vandall*, *Wald*, *Weiss*, and *Poemoceah*.

[¶31]  Leker simply does not allege facts relating to the Park District's conduct which were so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency to be regarded as atrocious and utterly intolerable in a civilized community.  While, in some instances, the conduct or statements of some of the Board members could be characterized as insulting, indignant, or rude, they do not rise to the threshold level required to support a claim for intentional infliction of emotional distress.  Consequently, this Court should dismiss Leker's claims for intentional infliction of emotional distress.

**CONCLUSION**

[¶32]  For the reasons set forth herein, Leker's claim of intentional infliction of emotional distress against the Fargo Park District should be, in all things, dismissed as the conduct of the Fargo Park District Commissioners as alleged in Leker's Complaint, and assumed to be true, does not rise to the level of extreme or outrageous conduct and is not so outrageous in character or so extreme in degree to go beyond all possible bounds of decency and to be

regarded as atrocious and utterly intolerable in a civilized community.

Dated: 5/15/26

/s/ Howard D. Swanson
Howard D. Swanson (ND Bar ID #04075)
Yusuf Abas (ND Bar ID #09828)
SWANSON & WARCUP, LTD.
1397 Library Circle, Suite 202
Grand Forks, ND  58201
Telephone: (701) 772-3407
*hswanson@swlawltd.com*
*yabas@swlawltd.com*
Attorneys for Defendant