UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | | |
|---|---|---|
| David A. Leker, | ) | |
| | ) | Case No. 3:25-cv-00059 |
| Plaintiff, | ) | |
| | ) | **DEFENDANT FARGO PARK** |
| -vs- | ) | **DISTRICT'S REPLY BRIEF** |
| | ) | **IN SUPPORT OF ITS MOTION** |
| Fargo Park District, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| Defendant. | ) | |

[¶1] Defendant, Fargo Park District, submits this reply brief in support of its motion for summary judgment. Despite Plaintiff's attempt to raise questions of fact, the Park District is entitled to judgment as a matter of law.

## LAW AND ARGUMENT

### I. Leker Expressly Waives His Claims for Retaliation and Punitive Damages

[¶2] On March 12, 2025, Leker asserted three separate claims against the Park District. Count I alleged age discrimination pursuant to 29 U.S.C. §§ 621–634; Count II alleged age discrimination retaliation pursuant to 29 U.S.C. §§ 621–634; and Count III asserted intentional infliction of emotional distress. *Leker v. Fargo Park Dist.,* No. 3:25-cv-00059 (D.N.D. Mar. 12, 2025), Doc. 1 (Compl. ¶¶ 33–53).

[¶3] On June 16, 2026, this Court adopted the parties' stipulation of partial dismissal (Doc. 18) and dismissed Plaintiff's IIED claim with prejudice (Doc. 19).

[¶4] On September 3, 2026, the Park District moved for summary judgment seeking

dismissal of Counts I and II (Doc. 21). On October 9, 2026, Plaintiff submitted his Brief in Opposition to Defendant's Motion for Summary Judgment, stating: "Leker does not oppose summary judgment on his retaliation claim (Count II) and does not seek punitive damages" (Doc. 24, ¶ 1). Accordingly, this Court should dismiss Count II and Plaintiff's prayer for punitive damages with prejudice.

## II. Leker Failed to Oppose Defendant's Failure to Exhaust Administrative Remedies Argument

[¶5] When a non-moving party fails to brief or oppose a specific issue raised in a motion for summary judgment, that failure constitutes a waiver of the argument as a matter of law. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.,* 558 F.3d 731, 735 (8th Cir. 2009). *See also Paskert v. Kemna-ASA Auto Plaza, Inc*., 950 F.3d 535, 540 (8th Cir. 2020) ("The 'failure to oppose a basis for summary judgment constitutes waiver of that argument,' because the non-moving party is responsible for demonstrating any genuine dispute of material fact that would preclude summary judgment." (quoting *Satcher*, 558 F.3d at 735)).

[¶6] Defendant's opening brief argued that Plaintiff failed to exhaust administrative remedies as to residency enforcement and his Performance Improvement Plan ("PIP") based ADEA theories (Doc. 21, ¶¶ 22–25). Due to Plaintiff's failure to respond to the dispositive exhaustion issue, this Court should grant summary judgment on all ADEA theories predicated on residency enforcement and the PIP.

## III. Leker's Employment Was Terminated Without Cause Pursuant to the Employment Agreement

[¶7] Plaintiff's opposition rests on a false premise in a failed attempt to create a genuine issue of material fact by arguing that the Fargo Park District was required to prove "cause" to terminate his employment. Under the terms of the Employment Agreement, Leker's employment was at-will, and the Board could choose whether to terminate his employment with or without cause (Doc. 21, Ex. 3). Consistent with that authority, the Board voted on June 30, 2023, to terminate Leker's employment "without cause" (Doc. 21, Exs. 17–18). Because the employment contract permitted a without-cause termination and the Board executed precisely that, the termination itself is not actionable absent proof that age was the but-for cause of the decision—a showing Plaintiff cannot make by insisting the Board needed "cause." The Board electing to terminate Plaintiff's employment without cause rather than with cause is not discriminatory and is not evidence of discrimination. *See Nash v. Optomec, Inc.*, 849 F.3d 780, 784, 786 (8th Cir. 2017) (holding that an employer's exercise of a contractual provision, including the termination of an at-will employee, is insufficient evidence of discrimination based on age); *Canning v. Creighton Univ.*, 995 F.3d 603, 613–14 (8th Cir. 2021) (holding that an employer's termination of an employee in accordance with company policy is not evidence that the employer's stated reason for termination was pretextual under the ADEA); *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (finding that enforcing a company policy is a legitimate, nondiscriminatory rationale for an employee's termination).

[¶8] Plaintiff also mischaracterizes the Park District's reliance on performance evidence as an admission that "cause" was required. It is not, and this does not create a fact issue. Even though an at-will employee can be terminated without cause as a matter of contract law, the employer still must provide a legitimate reason in defending against a discrimination claim. *Barucic v. Titan Tire Corp.*, 839 F. Supp. 2d 1038, 1044 (S.D. Iowa 2012). Here, the Park District relies on Leker's long-documented performance record to meet its burden of articulating a legitimate, nondiscriminatory reason for termination and to rebut any inference of age-based animus or pretext. As demonstrated across multiple evaluations and the 360 Review, commissioners, employees, and others persistently identified deficiencies in leadership, communication, vision, and responsiveness. These were the concerns the Board discussed at its June 30, 2023 Special Meeting when concluding that Plaintiff was not fulfilling his role (Doc. 21, Exs. 5–13, 17–18). The Park District has consistently maintained that Leker was terminated "without cause" under the Employment Agreement while also explaining, for purposes of defending its actions in this litigation, that the decision followed years of documented performance deficiencies and a failure to sufficiently improve notwithstanding placement on a PIP.

## IV. Leker Does Not Present Any Direct Evidence of Intentional Discrimination in His Response

[¶9] Leker's responsive brief is void of any argument or direct evidence demonstrating intentional discrimination. An employer inquiring into whether an employee over the age of 40 plans to retire within the next few years does not constitute direct evidence of age

discrimination. *Goodwin v. NIBCO, Inc.*, 564 F. Supp. 3d 740, 763 (E.D. Ark. 2021) (holding that a supervisor's questions to a 60-year-old employee regarding retirement plans and a presentation to the leadership team showing the employee's plan to retire in five years did not constitute direct evidence of age discrimination); *Bauer v. Metz Baking Co.*, 59 F. Supp. 2d 896, 905 (N.D. Iowa 1999) (finding that a supervisor's questions to a former employee regarding retirement plans were not direct evidence of age-based discriminatory animus). The mere mention or suggestion of retirement and a related succession plan shows "no more than that [the employer] wanted [the employee] to leave" the company. *Ziegler v. Beverly Enters.-Minn., Inc.*, 133 F.3d 671, 676 (8th Cir. 1998); *see also Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) (finding questions concerning an employee's retirement plans do not constitute direct evidence of age discrimination). Employment decisions motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors correlate with age, do not constitute age discrimination. *Hilde v. City of Eveleth*, 777 F.3d 998, 1006 (8th Cir. 2015).

[¶10] Therefore, Plaintiff's discussions of retirement status with Board members do not constitute direct evidence of intentional age discrimination. Termination without cause is not inconsistent with the Employment Agreement and does not create a question of fact to defeat summary judgment.

## V. Leker Conflates "Meeting Expectations" and "PIP Completion"

[¶11] Plaintiff's contention that he "completed" the PIP conflates the passage of time and

administrative closure with satisfactory performance. The Board instituted a PIP effective February 1, 2023, because of continued concerns with Plaintiff's performance (Doc. 21, Ex. 14). At the June 13, 2023 Regular Meeting, the Board acknowledged that the PIP was "completed" on May 31, 2023, and decided that a special board meeting would be held to discuss the results (Doc. 21, Ex. 16). At the June 30, 2023 Special Meeting, Commissioner Deutsch opened the discussion by stating, "[T]here are three potential avenues to move forward: <u>(1) accept the plan as complete; (2) to extend the performance improvement plan; (3) move forward with an exit plan</u>" (Doc. 21, Ex. 17) (emphasis added). The Board evaluated Plaintiff's performance and concluded, as it had previously explained, that he was not fulfilling the Executive Director job description (Doc. 21, Exs. 17–18). Plaintiff's suggestion that "completion" of the PIP means the performance mandate was satisfied ignores that the Board found otherwise after reviewing his performance history. Reaching the PIP end date or being told the PIP period concluded does not convert ongoing performance deficiencies into "meeting expectations" or erase deficiencies the Board continued to observe over time. The Board's June 30 deliberations culminated in a 3–2 vote to terminate, reflecting the majority's judgment that expectations were not met despite the PIP period having run its course.

[¶12] Plaintiff's argument also relies on selective excerpts while downplaying the Board's ultimate, majority judgment on June 30. The minutes and meeting record reflect that the majority of the Board concluded Plaintiff was not fulfilling Executive Director expectations

(Doc. 21, Exs. 17–18). Even Commissioners Deutsch and Hill, who opposed terminating Leker's employment, acknowledged performance deficiencies during annual reviews:

- Commissioner Deutsch stated: "Ultimately, Dave's calm personality leads to him not thinking things are a big deal that I know are (and I'm not the ED). So, when he doesn't reach out to commissioners ahead of time, it causes major issues. 'Lack of communication breeds negative assumptions.'" (Doc. 21, Ex. 8, p. 4).
- Commissioner Hill stated: "I think Dave needs to be more aware of his body language, especially in meetings. It seems like Dave's general response to criticism or feedback is dismissive or defensive." (Doc. 21, Ex. 9, p. 4).
- Commissioner Hill also stated: "I am not convinced this is the right seat for Dave. I often wonder if he really wants this role, or he serves in it more as a sense of duty to the staff or an uncertainty of what he would do if not this job. I don't think Dave believes in himself as a leader." (Doc. 21, Ex. 9, p. 6).

[¶13] These acknowledgments undermine the argument that PIP "completion" equated to satisfactory performance and confirm that unresolved leadership deficiencies remained material for the Board, not just those who voted to terminate Leker's employment.

[¶14] In his response, Plaintiff misses the point. The governing question is whether Plaintiff met legitimate expectations at the time of termination. The Board's decision to terminate Plaintiff was rooted in years of evaluations, a 360 review, and the Special Meeting deliberations, which answered that question decisively in the negative (Doc. 21, Exs. 5–18).

## VI. Timing, Retirement Discussions, and "Visionary" Comments

[¶15] Plaintiff's reliance on *Ridout* is misplaced. *Ridout* involved an absence of contemporaneous documentation, no counseling or warnings regarding performance deficiencies before discharge, and a post hoc description of "resistance" unsupported by specific circumstances. *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013).

[¶16] Plaintiff's attempt to compare this case to *Ridout* wholly fails. Here, Plaintiff's performance deficiencies were consistently documented over several years, beginning with performance reviews in July 2020 and continuing through his 360 review and placement on a PIP in February 2023 (Doc. 21, Exs. 5–14). The reviews and placement on a PIP reflected that Plaintiff failed to make sufficient progress, including deficiencies in the skills necessary to perform his job responsibilities. Moreover, the record contains performance evaluations documenting Plaintiff's deficiencies before his termination and addressing the same persistent performance concerns (Doc. 21, Exs. 5–18). Accordingly, unlike the retrospective justification at issue in *Ridout*, the evidence here demonstrates that the Board's performance concerns were continuously documented, communicated, and addressed before the Board ultimately decided to terminate Plaintiff's employment.

[¶17] Also, unlike the plaintiff in *Ridout*, Plaintiff's performance reviews conducted by the Board expressed unsatisfactory performance prior to his termination (Doc. 21, Exs. 5–13). Leker was subsequently placed on a PIP and afforded an opportunity to bring his performance up to a satisfactory level. Because he failed to meet the expectations set forth

in the PIP, the Board terminated his employment.

[¶18] Plaintiff's effort to recast *Ridout* also fails on its own terms. In *Ridout*, the employer's reliance on "declining performance" emerged without specifics after the fact. *Ridout*, 716 F.3d at 1084. Here, by contrast, the record contains pre-termination performance evaluations documenting the same categories of deficiencies the Board identified as grounds for its decision (Doc. 21, Exs. 5–18). The Board's explanation was not formulated after his employment termination; it was grounded in years of documented concerns regarding job performance.

[¶19] Plaintiff's selective emphasis on favorable excerpts from some reviews, and his assertion that the PIP's "completion" erased the Park District's ongoing concerns, do not convert years of consistent performance issues into a disputed "shift" in reasons. The record reflects persisting concerns about Plaintiff's leadership and performance, including deficiencies that remained unresolved despite opportunities for improvement. Indeed, even Commissioner Hill, who opposed termination, acknowledged Plaintiff's "leadership deficiencies" at the time of the vote (Doc. 21, Exs. 17–18). Any disagreement by the minority of the Board over the appropriate employment decision does not establish that the Park District's stated and documented performance concerns were pretextual.

[¶20] Lastly, Plaintiff argues that the comment relating to "visionary leadership" is evidence of discrimination. It is worth noting that this comment was made by Commissioner Deutsch, who actually voted against terminating Leker's employment (Doc. 21, Ex. 8, p. 5; Ex. 17).

## VII. Leker's Replacement Inferences Fail as a Matter of Law

[¶21] The Eighth Circuit has held numerous times that an employee replaced by a younger individual is not, on its own, evidence of pretext. *See Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007); *Main v. Ozark Health, Inc.*, 959 F.3d 319, 327–28 (8th Cir. 2020). Following Plaintiff's termination, the Board appointed two existing employees, Susan Faus and Dave Bietz, as Co-Interim Executive Directors (Doc. 21, Exs. 17–18). In December 2023, the Board appointed Susan Faus as permanent Executive Director based on her qualifications and prior finalist status (Doc. 21, Ex. 20). Ms. Faus was over forty years old at the time she was appointed (Doc. 1, ¶ 5). Plaintiff's effort to draw inferences from his replacement does not create a triable pretext issue where contemporaneous records support the decision.

## CONCLUSION

[¶22] For the foregoing reasons, Defendant Fargo Park District respectfully requests that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

Dated: 10/30/26

/s/ Howard D. Swanson

Howard D. Swanson (ND Bar ID #04075)
Yusuf Abas (ND Bar ID #09828)
SWANSON & WARCUP, LTD.
1397 Library Circle, Suite 202
Grand Forks, ND 58201
Telephone: (701) 772-3407
*hswanson@swlawltd.com*
*yabas@swlawltd.com*
Attorneys for Defendant